Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Matthew F. Kennelly | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 CR 440 | **DATE** | 1/28/2004 |
| **CASE TITLE** | USA vs. Darren Logan | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
  ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] For the reasons set forth on the attached Memorandum Opinion and Order, and those discussed in open court at the time of sentencing, the Court grants defendant's motion for downward departure (40-1) and imposes a sentence of ninety-five months imprisonment, to be followed by three years of supervised release.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | **Document Number** |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | FEB 2 – 2004 | |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | | 57 |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| OR | courtroom deputy's initials | | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

UNITED STATES OF AMERICA )
)
vs. ) Case No. 02 CR 440
)
DARREN LOGAN )

**DOCKETED**

FEB 2 - 2004

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Darren Logan pled guilty to a charge of possession of 4.2 grams of heroin with intent to distribute. His offense is unquestionably a serious one in view of the blight that illegal narcotics impose on our society, particularly on its weakest members. But in the overall spectrum of federal offenses, the Sentencing Guidelines place it at the lower end due to the relatively small quantity of heroin involved. If Mr. Logan had no criminal history, his sentencing range would be six to twelve months, in Zone B, which would permit a sentence of probation with home confinement or community confinement.

Mr. Logan, however, has a very significant criminal record. He is thirty-nine years old as of the date of sentencing. In 1982, at age sixteen, Mr. Logan was convicted of robbery as a juvenile and committed to the Illinois Youth Correctional Center. He was discharged at age eighteen. Ten months later, in March 1984, he committed an armed robbery and home invasion with several other young men, and in December 1984 he committed a residential burglary. He pled guilty to both charges in March 1985, at age twenty, and was sentenced to concurrent six year prison terms. He was paroled in November 1987. In July 1988, at age twenty-three, Mr. Logan was arrested for possession of a stolen motor vehicle. He pled guilty in December 1989

and was sentenced to a five year prison term. He was paroled in October 1991, at age twenty-seven.

In October 1993, at age twenty-nine, Mr. Logan committed an armed robbery to which he pled guilty in October 1994. He received a three and one-half year prison term. He received credit for time served while awaiting the disposition of the case, and he was paroled in December 1994, at age thirty. Six months later, he was charged with unlawful possession of a firearm. He was found guilty of this offense in December 1995 and received a ten year prison term. He was paroled in March 2000, at age thirty-five.

Mr. Logan was arrested for the present offense in January 2002, at age thirty-seven. He was observed by the police while apparently selling narcotics. The arresting officers observed several men approach Mr. Logan with whom a verbal altercation ensued. Mr. Logan pulled a gun, and the men ran away. When the officers approached Mr. Logan, he ran and dropped the gun. In his home, the officers found a scale and other items indicating that he had been selling narcotics. In addition to the heroin that is the subject of the charge, a small quantity (0.1 grams) of crack cocaine was recovered.

Mr. Logan's criminal history is a direct result of his use of and addiction to narcotics. He began using alcohol and marijuana at age thirteen. He began using heroin at age fourteen and became a heroin addict, using it daily when it was available to him. He began using both powder and crack cocaine at age twenty-two and also used that substance daily. Mr. Logan received narcotics counseling in 1999 while incarcerated in the Illinois Department of Corrections. But he relapsed into drug use following his release from prison.

After Mr. Logan was charged in this case, as part of the conditions of his release, he

underwent narcotics counseling, including a methadone program. He discontinued the methadone program because he hoped to be free of all controlled substances and felt that the program's result would be to addict him to methadone.

Mr. Logan was free from narcotics during most of the time his case was pending. But in the months before he pled guilty, his father passed away, his mother's health deteriorated significantly, and his long-time girlfriend was hospitalized for treatment of anxiety. Mr. Logan became overwhelmed by these events and returned to using drugs. In early March 2003, he was admitted to Gateway Center for intensive drug treatment. He successfully completed the Gateway program – the first time he had ever successfully completed a drug program on the "outside" – and continues to attend daily Narcotics Anonymous meetings and regular counseling. In addition, he has become a lead speaker at group counseling sessions. He has also participated as a speaker at regional conferences involving drug abuse prevention and treatment. Regular substance abuse testing performed by the Pretrial Services Office has confirmed that he has been substance-free since his entry into the Gateway program.

Since his guilty plea, Mr. Logan has also become a deacon in his church. The pastor of the church and the head deacon spoke at the sentencing hearing. They reported that Mr. Logan works at the church as a drug and alcohol abuse counselor and has performed valuable services in counseling others who might otherwise follow the same path he did. Mr. Logan's girlfriend (who has been with him for three years) reported that he is a completely changed person since his successful completion of the Gateway program; that he has taken financial responsibility for children he fathered in a previous relationship; and that he has become very involved in and committed to his church.

Mr. Logan also spoke at his sentencing. The Court has had the opportunity to observe and interact with Mr. Logan on numerous occasions in the twenty months since his arraignment. Given his criminal record and his history of narcotics use, the Court took a chance on Mr. Logan in releasing him on bail in May 2002. But though there have been a few bumps in the road – specifically Mr. Logan's brief relapse into drug use – all things considered, Mr. Logan performed admirably in the twenty months that he was free on bail. The Court is convinced of his sincerity when he states that he now has a completely different outlook toward life, and we are also convinced of his commitment to remain drug-free and a responsible member of society.

As indicated earlier, if Mr. Logan had no criminal history, he would be facing a six to twelve month "Zone B" sentence for his offense. However, his criminal history category is VI, the highest level, due to his extensive prior record. An "ordinary" offender in category VI being sentenced for Mr. Logan's crime would be subject to a sentencing range of twenty-four to thirty months. Mr. Logan, however, qualifies as a "career offender" under U.S.S.G. § 4B1.1 due to his 1985 conviction (nearly nineteen years ago) for residential burglary and his 1994 conviction (just over eight years ago) for armed robbery. As such, his offense level is increased to level twenty-nine pursuant to Guideline § 4B1.1. With credit for acceptance of responsibility, the sentencing range is 151 to 188 months (twelve and one-half to fifteen and one-half years).

Mr. Logan moved for a downward departure on several grounds, including, primarily, the contention that his criminal history category and career offender status significantly over-represent the likelihood that he will commit further crimes, and the contention that he has shown an extraordinary level of post-offense rehabilitation. When this motion was first presented, Mr. Logan had been drug-free for just over four months, and the government correctly noted that it

4

was too early to tell whether he would remain drug-free. The Court continued the sentencing for approximately six months. By the time of resentencing, Mr. Logan had been drug-free, as confirmed by frequent substance abuse testing, for more than ten months and had also been employed at his church for a significant period. After hearing further argument, the Court granted the motion for downward departure. The purpose of this Memorandum Opinion is to elaborate upon the reasons for the Court's decision.

Section 4A1.3 of the Sentencing Guidelines (prior to recent amendments that the parties agree do not apply to Mr. Logan's case) provides that "[i]f reliable information indicates that the criminal history category does not adequately reflect the seriousness of the defendant's past criminal conduct or the likelihood that the defendant will commit other crimes, the court may consider imposing a sentence departing from the otherwise applicable guideline range." U.S.S.G. § 4A1.3. This provision further states that "[t]here may be cases where the court concludes that a defendant's criminal history significantly over-represents the seriousness of a defendant's criminal history or the likelihood that the defendant will commit further crimes." *Id.*

Mr. Logan's criminal history category of VI most emphatically does *not* over-represent the seriousness of his criminal past. He has an aggravated prior criminal record that involved serious offenses, some of which involved violence or at least the threat of violence. Mr. Logan's past reflects a deplorable indifference to the safety and rights of others. But the Court is convinced that as Mr. Logan stands before the Court today, at age thirty-nine, his criminal history category of VI and his "career offender" status significantly over-represent the likelihood that he will commit further crimes following his release from prison.

Those who have a prior criminal record justifiably are subject to more severe sentences

5

than those who have none. A record of recidivism tends to be predictive of future criminal activity and thus warrants a longer sentence to protect society. It is also fair in the retributive sense to impose greater punishment on a person who has previously been subjected to the criminal justice system and imprisoned for prior offenses. This latter factor certainly applies in Mr. Logan's case; the Court has no hesitation in saying that he is appropriately sentenced much more severely than would be appropriate for a person with no (or a lesser) criminal record. But in view of the significant changes that Mr. Logan has made, the Court is convinced that the former factor – the likelihood of future recidivism – does not apply as one would ordinarily expect for a person with his criminal past.

There is no doubt, and it is undisputed by the government, that Mr. Logan's criminal history results directly from his use and addiction to drugs. That does not excuse his behavior or diminish its severity. But it does explain in large part why Mr. Logan behaved as he did. As a result of his addiction and use of heroin, cocaine, and crack cocaine, Mr. Logan followed a lifestyle and made relationships and associations that encouraged flouting the law and disregarding the rights, safety, and property of others.

Lest there be any misunderstanding, the Court believes that Mr. Logan is fully responsible for both his drug use and his criminal past; we are not attributing either of these to "external" factors. But the Court is convinced that he has now made a clean break from his past in a way that indicates that his future will be different. Though Mr. Logan has been drug-free before, that has occurred only when he was in prison and had no access to narcotics; now he has become drug-free even though drugs are available to him. And though he has undergone drug "treatment" in the past, the treatment occurred entirely in a prison setting. Such programs, at

6

least as they were operated at and when Mr. Logan enrolled, and the Gateway program that he successfully completed while released on bail in this case, are as different as night and day.

Further, Mr. Logan has not simply undergone drug treatment, and he has not simply become drug-free. He has instituted significant changes in his life and attitudes that the Court believes will have a significant impact on whether he will remain drug-free and crime-free in the future. If Mr. Logan can remain drug-free, the odds are overwhelming that he will not repeat his criminal past. At present, he has remained drug-free for nearly a year, longer than at any time in his life on the "outside" since he started using drugs. The Court believes that Mr. Logan has shown that under the circumstances, he will remain drug-free following completion of his sentence, as he has acquired both the will to do so and the tools that will permit him to do so. For that reason, his criminal history category, which includes the career offender enhancement, significantly over-represents the likelihood that he will commit further crimes. A downward departure is therefore appropriate under U.S.S.G. § 4A1.3.

The Court also finds that Mr. Logan's extraordinary post-offense rehabilitation is an appropriate basis for departure under U.S.S.G. § 5K2.0, both separately and in combination with the basis previously discussed. In *United States v. Bruder*, 945 F.2d 167 (7th Cir. 1991) (en banc), the Seventh Circuit held that a defendant's acceptance of responsibility was adequately taken into account by U.S.S.G. § 3E1.1 and thus a defendant's post-offense rehabilitation could not be a basis for a downward departure. *See id.* at 172-73. *Bruder*, however, predates *Koon v. United States*, 518 U.S. 81 (1996), in which the Supreme Court held that the fact that a particular factor is taken into account by the Sentencing Guidelines does not preclude its use as a ground for departure unless the Guidelines categorize it as a forbidden basis for departure or sentencing.

*See id.* at 96. In such circumstances, the Court concluded, the factor may be used as a basis for departure, but only "if the factor is present to an exceptional degree or in some other way makes the case different from the ordinary case in which the factor is present." *Id.*

Virtually every Circuit to consider the issue post-*Koon* has held that extraordinary post-offense rehabilitation may be used as the basis for a departure. *See, e.g, United States v. Chapman,* ___ F.3d ___, 2004 WL 86654, at *3-4 (8th Cir. Jan. 21, 2004) (collecting other Eighth Circuit decisions); *United States v. Bogdan,* 284 F.3d 324, 328-29 (1st Cir. 2002); *United States v. Rudolph,* 190 F.3d 720, 723 (6th Cir. 1999); *United States v. Pickering,* 178 F.3d 1168 (11th Cir. 1999) (departure may be appropriate, but must be made horizontally along criminal history axis); *United States v. Jones,* 158 F.3d 492, 502-03 (10th Cir. 1998); *United States v. Green,* 152 F.3d 1202, 1207 (9th Cir. 1998); *United States v. Rhodes,* 145 F.3d 1375 (D.C. Cir.1998); *United States v. Core,* 125 F.3d 74, 77 (2d Cir. 1997); *United States v. Sally,* 116 F.3d 76, 79 (3d Cir. 1997); *United States v. Brock,* 108 F.3d 31, 35 (4th Cir. 1997) (holding that *Koon* overruled prior circuit law to the contrary).

Though the Seventh Circuit has not had an occasion to address the point squarely since *Koon, see United States v. Lewis,* 79 F.3d 688, 693 n.1 (7th Cir. 1996) (noting that the court had not been called upon to interpret or revisit *Bruder*), this Court believes that if and when it is given the opportunity to do so, the Seventh Circuit will overrule *Bruder*.[1] We believe (as did the Fourth Circuit in *Brock* with respect to its own prior precedent) that *Koon* effectively undermined

---

[1] Prior to *Koon*, but without regard to *Bruder*, the Seventh Circuit indicated in *United States v. Bean,* 18 F.3d 1367, 1369 (7th Cir. 1994), that extraordinary acceptance of responsibility beyond what Guideline § 3E1.1 contemplates could be an appropriate basis for a downward departure. *Bean*, however, did not involve post-offense rehabilitation.

the Seventh Circuit's rejection in *Bruder* of "extraordinary post-offense rehabilitation" as a basis for departure from the prescribed sentencing range. *Cf. United States v. Jaroszenko,* 92 F.3d 486, 491 (7th Cir. 1996) (holding that Guidelines do not preclude court's consideration of defendant's remorse as basis for departure in "unusual cases," citing U.S.S.G. § 5K2.0); *United States v. Bean,* 18 F.3d 1367, 1369 (7th Cir. 1994) (extraordinary acceptance of responsibility beyond what U.S.S.G. § 3E1.1 contemplates might justify downward departure under U.S.S.G. § 5K2.0).

The Court therefore addresses whether this case in one is which Mr. Logan's rehabilitative efforts are present "to an exceptional degree" or make the case "different from the ordinary case in which the factor is present." *Koon,* 518 U.S. at 96. It is without question, as the government argues, that some degree of rehabilitation and remorse is to be expected while a case is pending and is contemplated by the Sentencing Guidelines, in particular the guideline regarding acceptance of responsibility. *See* U.S.S.G. § 3E1.1, app. note 1(g); *cf. United States v. Carter,* 122 F.3d 469, 475 (7th Cir. 1997) (noting that some degree of remorse is implicit in the concept of acceptance of responsibility). But under *Koon,* that does not preclude a departure in an exceptional case.

The Court is also cognizant of the fact that a defendant awaiting judgment in a criminal case has an added incentive to display remorse and to attempt rehabilitation – namely the prospect of a more severe sentence if he lacks remorse and a less severe one if he displays it and shows an effort to improve. *Cf. United States v. Buckley,* 251 F.3d 668, 670 (7th Cir. 2001) (expressing doubt that a defendant's "decision to be on his best behavior for a period of time *after sentencing* (20 months in this case), when he is hoping for a reversal that will require that he be resentenced, could be a persuasive ground for a sentencing discount" (emphasis added)).

That may be doubly true in Mr. Logan's case, given the prospect of a downward departure if he continued to succeed in his rehabilitative efforts; we are not so naive as to think that this factor played no role in his rehabilitation.

But there is much more to what Mr. Logan has done over the last year than "being on his best behavior." He kicked a severe addiction that he has had for nearly two-thirds of his life. This was a herculean task that required of Mr. Logan a daily commitment and effort exceptionally above and beyond what is required for the average criminal defendant to remain out of trouble pending sentencing. And he did not stop there: he now has a career in which he applies his own experience to the betterment of others.

Under the circumstances, the defense has established that Mr. Logan's rehabilitative efforts – which also involve an expression and manifestation of remorse and acceptance of his responsibility for his crimes beyond what is seen in the ordinary case – were exceptional and outside the heartland of what is contemplated by U.S.S.G. § 3E1.1. For this reason, the Court grants a downward departure on this basis as well, both separately and in combination with the "criminal history over-representation" departure discussed earlier.

The final issue concerns the extent of the departure. The extent of a departure must be tied to the structure of the Guidelines. *See, e.g., United States v. Scott*, 145 F.3d 878, 886 (7th Cir. 1998) ("The law merely requires that district judges link the degree of departure to the structure of the Guidelines and justify the extent of the departure taken."). There are no "hard and fast rules" for how to do this, *see United States v. Cruz*, 209 F.3d 644, 648 (7th Cir. 2000), but the Seventh Circuit has suggested "calculating the defendant's sentence by analogy to existing guideline provisions." *Id.* (quoting *United States v. Leahy*, 169 F.3d 433, 445 (7th Cir.

1999)). Though this is not always so easy to do in practice, it is a helpful rule of thumb that the Court will follow in this situation.

As discussed above, the enhancement of the criminal history category that applies to those with more crimes, and the significant enhancement of the offense level that applies to career offenders, stem from two considerations: that persons with significant criminal histories are more likely to commit future crimes and thus require a greater degree of incapacitation to protect society from their future wrongdoing; and that it is fair in a retributive sense to punish more severely one who has been previously convicted of crimes and has ignored significant incentives (avoiding a return to prison) to mend his ways. *See generally* U.S.S.G., Chapter 4, part A, introductory commentary ("A defendant with a record of prior criminal behavior is more culpable than a first offender and thus deserving of greater punishment. ... To protect the public from further crimes of the particular defendant, the likelihood of recidivism and future criminal behavior must be considered. Repeated criminal behavior is an indicator of a limited likelihood of successful rehabilitation."). We take these factors into account in determining the extent of the departure in this case.

First of all, based on the Court's examination of Mr. Logan's background and his rehabilitative efforts, our experience with the criminal justice system, and our experience in sentencing offenders (many of them repeat offenders) over the past four and one-half years, the Court believes that Mr. Logan, given his significant rehabilitative efforts, is roughly comparable to a person with a criminal history category of III. A defendant in criminal history category III who committed Mr. Logan's offense would be facing a sentence of ten to sixteen months, as contrasted with a non-career offender in category VI, who would face a sentence of twenty-four

11

to thirty months. Mr. Logan's sentencing range is thus increased by fourteen months at the low end due to what the Court has found to be the over-representation of his likelihood of recidivism. It is appropriate to deduct this increase as part of the departure in this case.

From the range that would apply to Mr. Logan were he not a career offender, his offense level is increased by nineteen levels based on his career offender status – from a range of twenty-four to thirty months were he a non-career category VI offender, to a range of 151 to 188 months in view of his career offender status – an increase of 127 months at the low end of the respective ranges. Though scientific analysis does not lend itself to this situation, the Court believes it is reasonable to say that one-third of that enhancement is attributable to the fact that a person with a record of repeated severe criminal behavior is likely to commit further similar crimes, with the remainder attributable to other factors such as the retribution factor previously discussed. Because the Court has concluded that this likelihood of recidivism has been shown to be lacking in Mr. Logan's case, it is appropriate to deduct from his sentence another forty-two months as part of the departure.

A reduction of a total of fifty-six months from the low end of Mr. Logan's sentencing range under the Guidelines results in a sentence of ninety-five months. That is the sentence that the Court has determined to impose in Mr. Logan's case. This is undeniably a severe sentence, but the Court believes that it is a fair one, given on the one hand Mr. Logan's significant criminal history, and on the other hand his extraordinary rehabilitation and resulting decreased likelihood of recidivism.

## Conclusion

For the reasons stated above and those discussed in open court at the time of sentencing,

the Court grants defendant's motion for downward departure [docket # 40-1] and imposes a sentence of ninety-five months imprisonment, to be followed by three years of supervised release with continued substance testing along with the other normal conditions of supervised release.

```
                                    _____
                                            MATTHEW F. KENNELLY
                                            United States District Judge
```

Date: January 28, 2004